UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>CUREPOINT, LLC,<br><br>    Debtor. | CASE NO. 22-56501-pmb<br><br>CHAPTER 11 |
| DAVID A. WENDER, in his capacity as CHAPTER 11 TRUSTEE,<br><br>    Plaintiff,<br><br>v.<br><br>PHILLIP MILES, JAMILA DADABHOY, MEC CAPITAL, INC., MIETTERE, INC., MMI EDUCATIONAL TECHNOLOGIES, LLC, NORTHWINDS LEASING, INC., and PHYSICIAN FINANCIAL PARTNERS, LLC<br><br>    Defendants. | A.P NO. 23-5162-pmb |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT PHILLIP MILES'S MOTION TO DISMISS**

    Plaintiff's Second Amended and Restated Complaint, like his initial complaint, alleges that Defendant Phillip Miles repeatedly held himself out as the Manager or Owner of the Debtor in order to obligate the Debtor on cash advances and equipment leases that redounded to the benefit of Miles through, among other means, entities controlled by Miles. (Indeed, Miles himself testified during the hearing on the motion to appoint a Chapter 11 Trustee that he acted as the Debtor's "designated manager" in incurring those obligations.) Plaintiff has also alleged that Miles repeatedly transferred funds from the Debtor to other Miles-controlled entities, and that Miles was unjustly enriched as a result. All of this was disclosed in the disclosure statement,

and the claims asserted against Miles were plainly retained upon confirmation of the plan, in which "any and all Claims or Causes of Action against Phillip Miles" were specifically identified as retained causes of action. And whatever effect state laws prohibiting assignment of some tort claims might have with respect to transfers to parties other than a bankruptcy trustee, they have no application here.

For all these reasons, discussed further below, Miles's motion to dismiss Plaintiff's Second Amended Complaint—filed only after Miles answered Plaintiff's substantially similar earlier complaint, in violation of Rule 12(b)—presents no basis to dismiss any of Plaintiff's claims.

I.  **BACKGROUND**

   A. **The Petition, the Disclosure Statement, and the Plan**

1. On August 19, 2022, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Phillip Miles, as "Designated Manager" for the Debtor, signed and filed the Debtor's petition and schedules. (D.I. 1, 37 & 82.)[1]

2. On October 17, 2022, the United States Trustee filed the *Notice of Appointment of Chapter 11 Trustee and Setting of Bond*, which, among other things, appointed David A. Wender as Chapter 11 Trustee for the Debtor's estate. (D.I. 104.) Mr. Wender filed his acceptance of the appointment on October 18, 2022, and the Court approved the appointment on October 19, 2022. (D.I. 106, 108.)

3. On August 29, 2023, the Chapter 11 Trustee filed his Motion for Entry of an Order approving, among other things, the disclosure statement. (D.I. 311.) The Trustee served

---

[1] "D.I." references are to Case No. 22-56501-pmb; "ECF No." references are to Adv. Pro. 23-5162-pmb.

copies of the disclosure statement and the plan on all creditors and parties-in-interest on August 30, 2023. (D.I. 317.)

4. The disclosure statement disclosed, among other things, that Mr. Miles caused the Debtor to enter into leases with—among others—Arvest Equipment Financing, Hewlett-Packard Financial Services Company, Arrow Capital Solutions Equipment Financing, First American Commercial Bancorp, Inc. Equipment Financing, and North American Banking Company, and that, on information and belief, the Debtor did not use the leased equipment. (D.I. 311-2 at pp. 26-28.)

5. The disclosure statement also disclosed that Mr. Miles had purported to obligate the Debtor on multiple merchant cash agreements, or "MCAs," including those with Secure Capital, LLC, Premium Merchant Funding 18, LLC, City Capital NY Cash Advance, and Click Capital Group, LLC, and that, on information and belief, the Debtor did not receive all of the proceeds from those agreements. (D.I. 311-2 at 29-30.)

6. The Court approved the plan on December 22, 2023, and the plan became effective at 11:59 p.m. on December 29, 2023. (D.I. 365.)

7. The Plan defines "Causes of Action" to include "each and every Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively of the Debtor or the Estate, whether arising before, on or after the Petition Date, in contract or tort, in law or in equity, or pursuant to any other theory of law," including among other things "any claim for breaches of duties imposed by

3

law or in equity," "any Avoidance Action," and "any state law fraudulent transfer claim." (D.I. 312 at p. 41.)[2]

8. The Plan specifically identifies as Retained Causes of Action "[a]ny and all Claims or Causes of Action *against Phillip Miles*." (D.I. 312-2 at p. 2 of 2 (emphasis added).) The Plan provides that the Liquidating Trustee "shall have the sole right to pursue any existing or potential Retained Cause of Action." (D.I. 312 at p. 18.)

9. Pursuant to Article IV of the plan, on the plan's effective date the Debtor and its estate transferred to the Liquidation Trust all of the Liquidation Trust Assets, which the plan defines to include "the Assets of the Estate as of the Effective Date," including without limitation the Retained Causes of Action. (D.I. 312 at 16, 46.)

10. The plan also provides that

> The Liquidation Trust, acting through the Liquidating Trustee, shall be authorized to exercise and perform the rights, powers, and duties held by the Estate with respect to the Liquidation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, or any similar official who has been appointed to take control of, supervise, manage, or liquidate the Debtor, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidation Trust Assets.

(D.I. 312 at 16.)

11. Plaintiff is the Liquidation Trustee, as approved by the Court in the confirmed plan. (D.I. 312 at 17.)

---

[2] The plan defines "Avoidance Actions" as "any and all causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation or an Adversary Proceeding has been commenced with respect to such Cause of Action as of the Effective Date." (D.I. 312 at 40.)

**B. The Adversary Proceeding and Plaintiff's Second Amended Complaint**

12. Plaintiff filed his initial complaint in this adversary proceeding on October 11, 2023. (ECF No. 1.) The original complaint, like the Second Amended and Restated Complaint, asserted claims against Miles for preferential transfers, fraudulent transfers (pursuant to §§ 548 and 550 and pursuant to § 544 and state law), unjust enrichment, breach of contract, and breach of fiduciary duty. (*Id.*)

13. Miles answered the initial complaint on January 5, 2024, which was the extended deadline for responding to the complaint. (ECF Nos. 10 (answer); 6 (order granting motion to extend time).)

14. On March 29, 2024, Miles filed a motion for leave to amend his answer, which the Court granted on April 9, 2024. (ECF Nos. 30, 46.) Miles filed his first amended answer on April 10, 2024. (ECF No. 47.)

15. On April 29, the defendants filed a motion for more definite statement based on the fact that the amended complaint filed on April 10 included references to Plaintiff as the "Chapter 11 Trustee," whereas, as the defendants acknowledged, "Mr. Wender in his capacity as the Liquidating Trustee should be the Plaintiff now in the above captioned case." (ECF No. 55 at 3.)

16. In response to the motion for a more definite statement, Plaintiff offered to file an amended complaint eliminating any purported ambiguity about Plaintiff's status as Liquidating Trustee and (former) Chapter 11 Trustee. (ECF No. 56.)

17. On May 21, 2024, the Court granted the motion for more definite statement and granted Plaintiff leave to file his Second Amended and Restated Complaint. (ECF No. 57.)

18. Plaintiff filed his Second Amended and Restated Complaint on May 28, 2024. (ECF No. 59.) The Second Amended and Restated Complaint includes the same claims against

5

Miles as were asserted in Plaintiff's initial complaint—that is, the claims which Miles answered. (*Id.*)

19. The Second Amended and Restated Complaint includes the following allegations:

a) Mr. Miles owns or controls each of the "Miles Entities," which are Physician Financial Partners ("PFP"), MEC Capital, Inc. ("MEC"), Mittere, Inc. ("Mittere"), and Northwinds Leasing, Inc. ("Northwinds"). (Second Amended & Restated Complaint ("Compl."), ECF No. 59, ¶¶ 25, 27, 30, 32, and 35.)

b) Mr. Miles entered into multiple merchant cash agreements, or "MCAs," including MCAs with Secure Capital, LLC; Premium Merchant Funding 18, LLC; City Capital; and Click Capital, purporting to obligate the debtor but transferring the proceeds of the MCAs to the Miles entities. (Compl. ¶¶ 164-223, 59.)

c) Mr. Miles caused millions of dollars to be transferred out of the Debtor's bank accounts for the benefit of the Miles entities. (*Id.* ¶¶ 70-75 (Court's findings with respect to transfers); ¶¶ 80-82 (Miles's testimony regarding transfers); ¶¶ 94-97, 103-06, 112-15, 121-24, 130-33.)

d) At the time of the transfers to the Miles entities, the Debtor was (or became) insolvent, was left without sufficient cash to operate its business, and/or believed that it would incur debts beyond its ability to repay. (*Id.* ¶¶ 99-101, 108-10, 117-19, 126-28.)

e) Miles was unjustly enriched by the Miles Entities' receipt of funds to the extent of his ownership interest in the Miles Entities. (*Id.* ¶ 480.)

f) Mr. Miles has made all of the financial decisions for the Debtor since the Debtor's formation. (*Id.* ¶ 79.)

6

g) At least since 2015, Mr. Miles directed the transfer of funds from the Debtor to the Miles Entities. (*Id.* ¶ 80.)

h) Miles executed the MCAs as the purported "Owner" of the Debtor. (*Id.* ¶¶ 167-68, 180-81, 194, 196, 213.)

i) Miles executed the equipment leases as the Debtor's purported "Owner," "Mgr," "Manager," or "Member/Manager." (*Id.* ¶¶ 250, 266, 278, 293, 305.)

j) To the extent Miles was actually authorized to act as Manager of the Debtor, his causing the Debtor to enter into the MCAs violated Section 5.6 of the Debtor's Operating Agreement, which provides that "[e]ach Manager shall act in a manner he believes in good faith to be in the best interest of the Company and with such care as an ordinarily prudent person in a like position would use under similar circumstances," because Miles's obligating the Debtor in exchange for disbursements to other entities in which Miles holds an interest fails to meet that standard. (*Id.* ¶¶ 41, 523-34.)

### C. **Miles's Motion to Dismiss the Second Amended and Restated Complaint**

On June 21, 2024, Miles moved to dismiss the claims asserted against him in the Second Amended Complaint. (ECF No. 66.) He argues that the state-law claims against him were not retained; that the claims against him for avoidance and recovery of transfers, for breach-of-contract, and for unjust enrichment "fail [for] lack of plausibility"; that the claim against him for breach of fiduciary duty "fails as a matter of law," and that the claims against him are not assignable. None of the arguments provides a basis to dismiss any of the claims asserted in the Second Amended and Restated Complaint. Moreover, because (i) Miles filed an answer to the original complaint and (ii) the Second Amended Complaint raises no new factual allegations or claims in respect of these claims, the Motion to Dismiss should be dismissed because it is procedurally improper.

7

## II.　ARGUMENT AND CITATION TO AUTHORITY

### A. Miles's Motion is Untimely.

As a preliminary matter, Miles's motion is untimely, at least to the extent it seeks dismissal pursuant to Fed. R. Bankr. P. 7012(b)(6). Miles answered Plaintiff's initial complaint, which included the same causes of action asserted in the Second Amended and Restated complaint, based on the same factual allegations included in the Second Amended and Restated Complaint. He may not now file a Rule 12(b)(6) motion to dismiss with respect to those claims. Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses [including failure to state a claim upon which relief can be granted] must be made before pleading if a responsive pleading is allowed."); *see also Kaspers v. Howmedica Osteonics Corp.*, 2015 WL 12085853 at *3 (W.D. Wash. Oct. 23, 2014) ("Rule 12(b) allows for the conclusion that by responding to a complaint with an answer, a defendant waives the right to respond to an amended complaint via motion, at least to the extent the defenses raised in the motion were 'available' in response to the initial complaint.") (citing Fed. R. Civ. P. 12(b)); *Howell v. Bank of America, N.A. (In re: Dorsey)*, 497 B.R. 374, 380 (Bankr. N.D. Ga. 2013) ("'new matter' [in an amended complaint] must give rise to a defense that did not exist prior to the amendment in order to revive a party's right to bring a Rule 12(b)(6) motion") (citing *Overton v. Wyeth, Inc.*, 2011 WL 1343392 at *3 (S.D. Ala. 2011)). To the extent Miles's motion is based on Rule 12(b)(6), it is untimely. As discussed below, even if timely, the motion also fails on the merits.

### B. The Claims Against Miles Were Preserved.

Miles claims that Counts IX and XII (avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 544 and state law), XIII (avoidance and recovery of preferential payments pursuant to 11 U.S.C. §§ 547 and 550), XV (avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 544 and state law), XVII and XX (unjust enrichment), and

8

XXIV (breach of contract) were not adequately disclosed or retained when the plan was confirmed. This argument ignores the simple fact that this adversary proceeding, and the claims asserted against Miles, were pending as of confirmation—this adversary proceeding was filed on October 11, 2023. (ECF No. 1.) Miles's argument also ignores the confirmed plan's relevant language, and the express language of the disclosure statement, and is not supported by the (out-of-circuit) cases on which it relies.

The Plan defines "Retained Causes of Action" to include "any Cause of Action identified on Schedule B, other than any Cause of Action that was sold to the Buyer pursuant to the Asset Purchase Agreement and Sale Order," and "[a]ny and all Claims or Causes of Action which are the subject of a pending Adversary Proceeding." (D.I. 312 at 49.) "Causes of Action," in turn, includes "each and every Claim, cause of action, controversy, demand, right, action. . . assertable directly or derivatively of the Debtor or the Estate, whether arising before, on or after the Petition Date, in contract or tort, in law or in equity, or pursuant to any other theory of law," including among other things "any claim for breaches of duties imposed by law or in equity"; "any Avoidance Action"; and "any state law fraudulent transfer claim." (D.I. 312 at p. 41.) The Plan specifically identifies as Retained Causes of Action "[a]ny and all Claims or Causes of Action *against Phillip Miles*" and "[a]ny and all Claims or Causes of Action which are the subject of a pending Adversary Proceeding." (D.I. 312-2 at p. 2 of 2 (emphasis added).)

Putting aside the fact that this Adversary Proceeding was filed prior to confirmation, the disclosure statement also provides even more information about potential claims against Mr. Miles. The statement discloses that Mr. Miles caused the Debtor to enter into leases with Arvest, Hewlett-Packard, Arrow, First American, and North American—the same leases that form the bases for Counts XIX and XX of the Second Amended and Restated Complaint—and that, upon

9

information and belief, the Debtor did not use the leased equipment. (D.I. 311-2 at pp. 26-28.) The disclosure statement also discloses Miles's obligating the Debtor on the merchant cash agreements, or "MCAs," that form the bases for XVI and XVII of the Second Amended and Restated Complaint, and that, upon information and belief, the Debtor did not receive all of the proceeds from those agreements. There can be no serious doubt that creditors voting on the plan were well aware of the estate's claims against Miles.

Nevertheless, Miles's motion argues that some courts—though not the Eleventh Circuit, as Miles concedes—have required some heightened "specificity" in a plan's reservation of claims. This Court, however, has previously concluded that "§ 1123(b)(3) does not require that a plan specifically identify potential defendants against which causes of action are retained or that it describe specific claims." *Kaye v. A.R.E. Dist. & Alpine Records, LLC (In re Value Music Concepts)*, 329 B.R. 111, 119-120 (Bankr. N.D. Ga. 2005). The question is whether the plan gave adequate notice to creditors and sufficiently identified "the types or categories of retained causes of action." *Id.* at 120. That standard was amply met here; the plan not only reserves all claims and causes of action in contract or tort, specifically including avoidance actions, but also identifies claims against Phillip Miles as among those reserved.

And even putting aside that the cases upon which Miles relies are from outside the Eleventh Circuit, none of them supports dismissal of the Liquidating Trustee's claims here. *See P.A. Bergner & Co. v. Bank One (In re: P.A. Bergner & Co.)*, 140 F.3d 1111, 1117 (7th Cir. 1998) (rejecting argument that claims were not sufficiently preserved); *McFarland v. Leyh (In re: Texas Gen. Petroleum Corp.)*, 52 F.3d 1330 (5th Cir. 1995) (claims were sufficiently disclosed even though claims against the defendant were not specifically listed as retained claims); *Harstad v. First American Bank*, 39 F.3d 898, 902 (8th Cir. 1994) (plan's general

10

provision providing for Bankruptcy Court's continuing jurisdiction was not a reservation of claims); *Retail Marketing Co. v. King (In re Mako, Inc.)*, 985 F.2d 1052, 1055 (10th Cir. 1993) (provision referring to "the debtor's rights in pending litigation" and "pending appeals to which the debtor or the liquidating trustee is or was a party on the effective date" insufficient to reserve new claims); *Fleet Nat'l Bank v. Gray (In re: Bankvest Capital Corp.)*, 375 F.3d 51, 59 (1st Cir. 2004) (plan adequately preserved right to bring avoidance actions); *Mercury Comp., Inc. v. Comerica Bank*, 2014 WL 561993 at *5 (D. Col. Feb. 12, 2014) (claims against defendant not mentioned in the plan); *VMI Liquid. Trust v. Wells Fargo Home Mtge., Inc.*, Adv. Pro. No. 12-1270-ABC, Bankr. D. Col. Aug. 5, 2013, ECF No. 42, slip op. at 5 (claims sufficiently preserved even though defendant not mentioned in plan); *Houston v. Connolly (In re: Western Integrated Networks, LLC)*, 329 B.R. 334 (Bankr. D. Col. 2005) (declining to reconsider conclusion that plan that did not mention defendant did not reserve claims against defendant), *see also* 322 B.R. 156 (Bankr. D. Col. 2005); *Dynasty Oil and Gas, LLC. v. Citizens Bank (In re: United Operating, LLC)*, 540 F.3d 351 (5th Cir. 2008) (claim for alleged maladministration of the estate's property during bankruptcy not preserved in plan); *Yaquinto v. Ehrman (In re: Hart Oil & Gas, Inc.)*, Adv. No. 14-01138 (Bankr. D.N.M. Dec. 13, 2016), ECF No. 117, slip op. at 5 (no mention of potential claims against defendant in schedules, disclosure statement, or plan); *Smelcer v. Citizens Bank of Kilgore (In re: Hart Oil & Gas, Inc.)*, 534 B.R. 35, 50 (Bankr. D.N.M. 2015) (potential claims against defendant not mentioned in plan or disclosure statement); *Lovett v. Cardinal Health, Inc. (In re: Diabetes America, Inc.)*, 485 B.R. 340, 357-59 (Bank. S.D. Tex. Dec. 21, 2012 (potential claims preserved even though defendant not mentioned by name in the plan).

The claims against Miles were multiply disclosed as claims retained upon confirmation of the plan—not only by the "any cause of action" language, but by the references to "Avoidance Actions," "claims for breaches of duty imposed by law or equity," and "[a]ny and all Claims or Causes of Action *against Phillip Miles*" (D.I. 312-2 at p. 2 of 2 (emphasis added)), as well as by the fact that this adversary proceeding was pending when the plan was confirmed. Under any reasonable standard, the claims were disclosed and retained after plan confirmation.

### C. The Complaint States Claims Against Miles for Preferential and Fraudulent Conveyances, Breach of Contract, and Unjust Enrichment.

Next Miles argues, without citation to a single case, that the Second Amended and Restated Complaint does not state a claim against Miles for avoidance and recovery of preferential payments pursuant to 11 U.S.C. §§ 547 and 550 (Counts I, IV, VII, X, and XIII); for avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 548 and 550 (Counts II, V, VIII, XI, and XIV); for avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. § 544 and O.C.G.A. §§ 18-2-74 and 18-2-75 (Counts III, VI, IX, XII, and XV); for unjust enrichment (Counts XVII and XX); or for breach of contract (Count XXIV). The argument seems to be that the claims should be dismissed as to Mr. Miles personally because the complaint alleges that Miles used other entities he owned and/or controlled to funnel money out of the Debtor rather than transferring the money directly to himself. The argument fails as to each of the challenged counts.

11 U.S.C. § 550 permits recovery of "the property transferred, **or if the court so orders, the value of such property**, from—(1) the initial transferee **or the entity for whose benefit such transfer was made**; or (2) any immediate or mediate transferee of such initial transferee." (emphases added). And a trustee "may simultaneously avoid a transfer under § 544 and seek recovery under § 550," *IBT Int'l v. Northern (In re: Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706

12

(11th Cir. 2005). The Trustee has alleged that Miles caused the Debtor to transfer money to Miles-controlled entities; that the transfers are avoidable under § 547; and that Miles as an owner of the recipient entities benefitted from the transfers. This states a cognizable claim under §§ 547, 548 and 550.

Georgia law also permits recovery of damages for transfers voidable under O.C.G.A. §§ 18-2-24 and 18-2-25, including recovery of general and punitive damages, and does not limit a plaintiff to setting aside the fraudulent transaction. *Interfinancial Midtown, Inc. v. Choate Constr. Co.*, 343 Ga. App. 793, 801-05 (2017); *see also* O.C.G.A. § 18-2-77(a)(3)(C) (authorizing "[a]ny other relief the circumstances may require"); *Lawson v. Athens Auto Supply & Elec., Inc.*, 200 Ga. App. 609, 613 (1991) (upholding a jury verdict assessing general damages against an individual defendant who transferred assets from one company to another that he controlled); *Kesler v. Veal*, 257 Ga. 677, 678-79 (1987) (affirming general damages award against defendant who effected fraudulent transfer); *Cavin v. Brown*, 246 Ga. App. 40, 43 (2000) (same).

The Trustee's complaint also states a claim for unjust enrichment against Miles, who not only caused the fraudulent transfers, but is an owner of each of the entities that received the fraudulent transfers and benefitted from them. *See, e.g.*, *GEBAM, Inc. v. Investment Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1328 (N.D. Ga. 2013) (fact issues precluded summary judgment on unjust enrichment claim against individual defendants based on disbursements to them from company in which they had an interest).

The complaint also states a claim for breach of contract. Miles asserts without elaboration that there is an "absence of a contractual relationship" (Br. at 17) and that the breach of contract claim against him therefore must be dismissed. But the Trustee's complaint alleges that Miles's

13

conduct breached the Debtor's Operating Agreement, and that, to the extent he was actually authorized to act as Manager of the Debtor—as he repeatedly held himself out to be, including on filings in this Court—Miles is bound by, and breached, the Operating Agreement. Indeed, Miles himself claims in his motion to dismiss that he was "designated from time to time to act for Curepoint," (Br. at 19), and he testified to that effect at the hearing for appointment of a Trustee (ECF No. 59-2 at 92:15-93:13; 94:21-95:7; 95:13-15 ("I have been designated as manager, just as I am in this bankruptcy proceeding, at different times.").) There is no basis on which to dismiss the Trustee's claim that Miles, to the extent he was ever the manager of the Debtor, breached the Debtor's operating agreement.

### D. The Complaint States a Claim for Breach of Fiduciary Duty.

As discussed above, Miles has repeatedly held himself out as the Manager of the Debtor and has testified that has been "designated" as the Debtor's manager at various times, including with respect to his obligating the Debtor on contracts benefitting Miles-owned entities. He has testified that he acted as manager of the Debtor with respect to the obligations that are the subject of the Trustee's complaint. (ECF No. 59-2 at 92:9-93:18; 94:15-95:14.) Whether Miles's fiduciary duties to the Debtor arose from the Operating Agreement; from Ms. Dadabhoy's alleged "designation" of him as manager; and/or from his assumption of such duties by, among other things, acting as manager by authorizing the incurrence of debt in the name of the Debtor, the facts alleged in the Trustee's complaint amply support the claim that Mr. Miles had, and breached, a fiduciary duty to the Debtor. *See, e.g.*, *PNC Fin. Svcs. Grp., Inc. v. Gibson*, 901 S.E.2d 331, 339 (Ga. App. 2024) ("the existence of a fiduciary duty 'is determined by the substantive agreement of the parties[,] not . . . by labels placed on the relationship'") (quoting *SFM Holdings v. Banc of America Sec.*, 600 F.3d 1334, 1339 (III) (B) (11th Cir. 2010)); *Wright v. Apt. Inv. & Mgmt. Co.*, 315 Ga. App. 587, 592 (2012) ("designated representative" owed

14

fiduciary duties); *see also Yarbrough v. Kirkland*, 249 Ga. App. 523, 527 (2001) ("When a fiduciary or confidential relationship is not created by a contract, we must examine the facts of a particular case to determine if such a relationship exists.").

### E. The Liquidating Trustee's Standing to Assert Claims the Claims Against Miles is Unaffected by State Law Regarding Assignability.

Miles's last argument is that the Trustee cannot assert tort claims, including a claim for breach of fiduciary duty, because those claims are not assignable under Georgia law. This argument also fails. The Debtor's claims against Miles became property of the bankruptcy estate as a matter of federal law, notwithstanding Georgia law regarding assignability. 11 U.S.C. § 541(c)(1)(A); *see also Cummins v. Hays (In re: Cummins)*, 157 B.R. 657, 657-58 (Bankr. W.D. Ark. 1993) ("Thus, under the plain language of the statute, the tort claims became property of the estate upon the filing of the voluntary petition in bankruptcy, including claims the debtor could not assign under state law.") (citations omitted); *In re Hice*, 223 B.R. 155, 159 (Bankr. N.D. Ill. 1998).

To the extent Miles argues that the claims, though property of the estate, cannot be asserted by the Liquidating Trustee, the argument also fails:

> We think the bankruptcy court correctly concluded that the Operating Agreement and state law were not violated by the transfer of the Debtor's interests in West Lakeside to the [Liquidating] Trust. At bottom, there was no transfer out of the estate to a third party; rather, under § 1123(b)(3)(B), the Trust was merely a representative of the estate concerning enforcement of Debtor's interest in West Lakeside.

*Phoenix, LLC v. The Alameda Liq. Trust (In re Alameda Invests., LLC)*, 2014 WL 868605 at *7 (B.A.P. 9th Cir. March 5, 2014). The cases Miles cites, none of which involved transfers to a liquidating trust pursuant to a plan, are inapt. *See Integrated Sols., Inc. v. Service Support Specs., Inc.*, 124 F.3d 487 (3d Cir. 1997) (assignment to third party from bankruptcy trustee); *Freeman*

15

*v. Basso*, 128 S.E.3d 138 (Mo. App. 2004) (same); *Haigler v. Dozier (In re Dozier Fin., Inc.)*, 587 B.R. 637 (Bankr. D.S.C. 2018) (transfer to trustee from third party, not pursuant to the Bankruptcy Code or a bankruptcy plan).

### III.    CONCLUSION

For the reasons discussed above, Miles's motion to dismiss should be denied.


/s/ *Valerie S. Sanders*
David A. Wender  (748117)
Valerie S. Sanders (625819)
Nathaniel T. DeLoatch (216330)
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309-3996
404.853.8000 (t)
404.853.8806 (f)
davidwender@eversheds-sutherland.com
valeriesanders@eversheds-sutherland.com
nathanieldeloatch@eversheds-sutherland.com

*Counsel for David A. Wender,
in his capacity as Chapter 11 Trustee and
Liquidating Trustee of the Curepoint
Liquidation Trust*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 5, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served on all counsel of record either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel of parties who are not authorized to receive Notices of Electronic Filing.

/s/ *Valerie S. Sanders*
Valerie S. Sanders