

**IT IS ORDERED as set forth below:**

**Date: September 30, 2024**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | \| | |
| | \| | CASE NUMBER |
| **CUREPOINT, LLC,** | \| | **22-56501-PMB** |
| | \| | |
| Debtor. | \| | CHAPTER 11 |
| _____ | \|_____ | _____ |
| | \| | |
| **DAVID A WENDER, in his capacity as the Trustee of the Curepoint Liquidation Trust,** | \| | |
| | \| | |
| | \| | ADVERSARY PROCEEDING |
| Plaintiff, | \| | |
| v. | \| | NO. **23-5162** |
| | \| | |
| **PHILLIP MILES, JAMILA DADABHOY, MEC CAPITAL, INC., MITTERE INC, MMI EDUCATIONAL TECHNOLOGIES, LLC, NORTHWINDS LEASING, INC., AND PHYSICIAN FINANCIAL PARTNERS, LLC,** | \| | |
| | \| | |
| Defendants. | \| | |
| _____ | \|_____ | _____ |
| | \| | |
| **PHILLIP MILES, JAMILA DADABHOY, MEC CAPITAL, INC., MITTERE INC, MMI EDUCATIONAL TECHNOLOGIES, LLC, NORTHWINDS LEASING, INC., AND** | \| | |

**PHYSICIAN FINANCIAL PARTNERS, LLC,** |
| |
| Counter-Plaintiffs, |
v. |
| |
**DAVID A. WENDER, in his capacity as the** |
**Trustee of the Curepoint Liquidation Trust,** |
| |
| Counter-Defendant. |
_____|_____

### ORDER DENYING PHILLIP MILES'S MOTION TO DISMISS

On June 21, 2024, Mr. Phillip Miles ("Miles"), one of the above-named defendants (collectively, the "Defendants"), filed a *Motion to Dismiss Plaintiff's Complaint and Brief in Support* (Adversary Proceeding Docket No. 66)(the "Motion"), in which he requests that the Court dismiss this case brought against him by the above-named plaintiff (the "Plaintiff" or "Trustee") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). In the Motion, Miles asserts that the state law claims the Trustee asserts against him were not properly disclosed and retained in the *Chapter 11 Plan* (Main Case Docket No. 312)(the "Plan") of the above-named debtor (the "Debtor") filed on August 29, 2023, such that the claims cannot be pursued. Miles adds that granting the Motion is appropriate because he never directly received a transfer of funds for the Trustee to avoid or recover as a preference, no fiduciary duty was breached because he was not a director, manager, member, or officer of the Debtor and thus owed no such duty, and the tort claims asserted against him by the Trustee are not assignable under Georgia law. Miles also suggests that pursuant to FRCP 12(b)(1) this Court lacks subject matter jurisdiction over this matter because the Trustee failed to reserve the claims asserted herein. In response to the Motion, on July 5, 2024, the Trustee filed his *Response in Opposition to Defendant Phillip Miles's Motion to Dismiss* (Adversary Proceeding Docket No. 70)(the "Response"), in which he requests the Court deny the Motion.

2

In his Response, the Trustee states that the Motion is untimely because Miles filed an answer to an earlier, nearly identical complaint, the claims against Miles were properly preserved, and that the claims for preferential and fraudulent conveyance, breach of contract, and unjust enrichment were all sufficiently well-plead considering Miles held himself out as a manager for the Debtor and acted in a managerial capacity for the Debtor at times. The Trustee argues further that, notwithstanding Georgia law regarding assignability, the claims brought against Miles became property of the Debtor's bankruptcy estate as a matter of federal law, thereby allowing the Trustee to pursue the claims under to 11 U.S.C. § 1123(b)(3). On July 19, 2024, Miles filed a *Reply to Plaintiff's Response in Opposition to Defendant Phillip Miles' [sic] Motion to Dismiss* (Adversary Proceeding Docket No. 74)(the "Reply") in response to the Trustee's Response. In the Reply, Miles argues that the claims asserted against him were impermissibly assigned to the Trustee in his capacity as the liquidating trustee, Miles's prior testimony regarding his role with the Debtor is not dispositive to preclude him from litigating the issue of his liability, and the state law claims brought against Miles were not adequately disclosed to be retained post-confirmation. Miles further contends that the Trustee made no plausible allegations to establish that Miles is personally liable for avoidable transfers to entities, he has no fiduciary duty to the Debtor because his actions never gave rise to such a duty, and that under Georgia law the tort claims brought against him are not assignable.

## **BACKGROUND**

The Debtor initiated this bankruptcy case (the "Main Case") by filing a voluntary petition (Main Case Docket No. 1) under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on August 19, 2022 (the "Petition Date"). Upon the request of several interested parties, the United States Trustee appointed the Trustee to serve as the Chapter 11 trustee herein on October

17, 2022. *See* Main Case Docket No. 104.[1]  Following his appointment in the Main Case, on August 29, 2023, the Trustee filed the Plan and the *Chapter 11 Trustee's Motion for Entry of an Order Approving the Adequacy of the Disclosure Statement, Approving the Solicitation and Notice Procedures with respect to Confirmation of the Chapter 11 Plan of Liquidation of Curepoint, LLC, Approving the Forms of Ballots and Notices in Connection Therewith and Scheduling Certain Dates in Connection Therewith* (Main Case Docket No. 311), which included, among other things, the disclosure statement that was later amended by the *Trustee's First Amended Disclosure Statement* (Main Case Docket No. 339)(the "Disclosure Statement") on October 15, 2023. Thereafter, on October 25, 2023, the Disclosure Statement was approved, *see* Main Case Docket No. 341, and, after a confirmation hearing on December 18, 2023, the Plan was confirmed on December 22, 2023, *see* Main Case Docket No. 365.[2]

In the Disclosure Statement, the Trustee disclosed, in relevant part, that Miles was involved in the Debtor's financial affairs prior to the Trustee's appointment in the Main Case. More specifically, the Disclosure Statement discloses that Miles caused the Debtor to enter certain leasing agreements (the "Equipment Leases") with Arrow Capital Solutions ("Arrow"), Arvest Equipment Finance ("Arvest"), First American Commercial Bancorp, Inc. ("First American"),

---

[1] The Honorable Jeffery W. Cavender held a hearing on Mark McCord's *Motion to Appoint Chapter 11 Trustee with Notice of Hearing on Motion to Appoint Chapter 11 Trustee* (Main Case Docket No. 52)(the "McCord Motion"), the United States Trustee's *Motion for an Order Directing the Appointment of a Chapter 11 Trustee* (Main Case Docket No. 54)(the "UST Motion"), AMOA Finance, LLC's *Motion to Appoint Trustee with Notice of Hearing on Motion to Appoint Chapter 11 Trustee* (Main Case Docket No. 68)(the "AMOA Motion"), and the Debtor's *Amended Motion to Sell* (Main Case Docket No. 75)(the "Sale Motion") on October 12, 2022 (the "Hearing"). The Hearing was continued to October 13, 2022 (the "Continued Hearing"), at which time Judge Cavender orally granted both the AMOA Motion and the McCord Motion, but denied both the Sale Motion and the UST Motion as memorialized in the Court's *Order GRANTING Mark W. McCord, M.D. and AMOA Finance LLC's Motions to Appoint Chapter 11 Trustee (Related Doc # 52, 68), DENYING as Moot, the United States Trustee's Motion to Appoint Chapter 11 Trustee (Related Doc # 54), and DENYING Debtor's Motion to Sell* (Main Case Docket No. 96) entered on October 13, 2022.  Following the appointment of the Trustee, the Main Case was reassigned to the Honorable Paul M. Baisier on November 17, 2022. *See* Main Case Docket No. 142.

[2] None of the Defendants filed an objection to the confirmation of the Plan, voted on the Plan or appeared at the confirmation hearing on the Plan.  In addition, none of the Defendants have filed a proof of claim in the Main Case.

4

Hewlett-Packard Financial Services Company ("HP"), and North American Banking Company ("North American"). Further, the Trustee disclosed that Miles caused the Debtor to enter certain merchant cash advance agreements (the "MCAs") with City Capital NY, LLC ("City Capital"), Click Capital Group, LLC ("Click"), Premium Merchant Funding 18, LLC ("Premium"), and Secure Capital, LLC ("Secure Capital"). Moreover, the Disclosure Statement discloses that retained causes of action, as defined in the Plan, "are expressly preserved regardless of any language in the Plan that could provide for release or exculpation . . . ."

Based on the liquidation analysis contained in the Plan, the Plan does not project to pay 100% of the claims filed in the Main Case. Article IV of the Plan provides that on the effective date of the Plan, the Debtor and its estate "shall transfer" the liquidation trust assets, which the Plan defines as the assets of the estate as of the effective date, including, but not limited to the Debtor's Retained Causes of Action, to the liquidation trust (the "Liquidation Trust"). Elsewhere, the Plan defines the Liquidation Trust as the trust "formed pursuant to [the] Plan, Liquidation Trust Agreement, and the Confirmation Order," for which the Trustee was appointed as the liquidating trustee. Further, the Plan defines Retained Causes of Action as "any Cause of Action identified herein on Schedule B," which expressly includes any and all "Claims or Causes of Action" against Phillip Miles and any and all "Claims or Causes of Action" that are the subject of a pending adversary proceeding. "Causes of Action" is broadly defined in the Plan to include "each and every Claim, cause of action, controversy, demand, right, action, . . . , suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively of the Debtor or the Estate, whether arising before, on or after the Petition Date, in

contract or tort . . . ."  The Plan further defines "Causes of Action" to include "any Avoidance Action."[3]

Prior to the Plan being confirmed, on October 11, 2023, the Trustee commenced this adversary proceeding against the Defendants by filing a *Complaint* (Adversary Proceeding Docket No. 1)(the "Initial Complaint").  In the Initial Complaint, the Trustee asserted claims for avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, and 550 and O.C.G.A. §§ 18-2-74 and 18-2-75, avoidance and recovery of preferential payments pursuant to 11 U.S.C. §§ 547 and 550, unjust enrichment, breach of contract, and breach of fiduciary duty against Miles. After the parties agreed to extend the deadline to respond to the Initial Complaint, *see* Adversary Proceeding Docket No. 6, on January 5, 2024, Miles filed an *Answer, Affirmative Defenses and Counterclaims* (Adversary Proceeding Docket No. 10)(the "Initial Answer") in response to the Initial Complaint.[4]  Miles, alongside the Miles Entities, later sought leave to amend the Initial Answer on March 29, 2024, to correct technical and typographical errors, *see* Adversary Proceeding Docket No. 30, which the Court granted on April 9, 2024, *see* Adversary Proceeding Docket No. 46. Miles and the Miles Entities filed their First Amended Answer to Complaint and Affirmative Defenses and Counterclaims (Adversary Proceeding Docket No. 47)(the "Amended Answer")(collectively, with the Initial Answer, the "Answer") one (1) day later on April 10, 2024.[5]

---

[3] The Plan defines "Avoidance Actions" as "any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code . . . ."

[4] The Initial Answer was filed on behalf of Miles, MEC Capital, Inc. ("MEC"), Mittere Inc. ("Mittere"), MMI Educational Technologies, LLC ("MMI"), and Northwinds Leasing, Inc. ("Northwinds")(collectively, the "Miles Entities") and asserted counterclaims for breach of contract and unjust enrichment against the Trustee and the Debtor's Estate in addition to answering the Initial Complaint.

[5] The Trustee later sought leave from the Court to amend his Initial Complaint on April 12, 2024, *see* Adversary Proceeding Docket No. 50, which the Court granted on April 15, 2024, *see* Adversary Proceeding Docket No. 51. Two (2) days later, the Trustee filed his *First Amended and Restated Complaint* (Adversary Proceeding Docket No. 52) in which he was substituted as the plaintiff herein in his capacity as the "Liquidating Trustee."

Thereafter, on April 29, 2024, the Defendants filed a *Joint Motion for More Definite Statement* (Adversary Proceeding Docket No. 55), which the Court granted on May 21, 2024, *see* Adversary Proceeding Docket No. 57, and which precipitated the Trustee's filing on January 5, 2024, of his *Second Amended and Restated Complaint of David Wender as Trustee of the Curepoint Liquidation Trust* (Adversary Proceeding Docket No. 59)(the "Amended Complaint").[6] On June 18, 2024, Miles and the Miles Entities filed an *Unopposed Motion to Extend Time to File Answer or Other Responsive Pleadings* (Adversary Proceeding Docket No. 63) to request additional time to respond to the Amended Complaint, which the Court granted on June 20, 2024 (Adversary Proceeding Docket No. 64).  The following day, Miles filed the Motion.

As noted above, in the Amended Complaint, the Trustee asserts claims for avoidance and recovery of fraudulent transfers, avoidance and recovery of preferential payments, unjust enrichment, breach of contract, and breach of fiduciary duty against Miles.[7]  The Trustee prosecutes these causes of action in his capacity as the liquidating trustee of the "Curepoint Liquidation Trust" as established by the confirmed Plan, which became effective on December 29, 2023 (the "Effective Date"). (Am. Compl. ¶ 6).  Summarized below are, except as otherwise noted, the Trustee's allegations in the Amended Complaint.

---

[6] The Trustee asserts the same claims against Miles in the Initial Complaint and each of his subsequent amendments to the same, including the Amended Complaint.

[7] A total of nineteen (19) counts have been asserted against Miles. (Am. Compl. ¶¶ 318-472, 478-83, 495-500, 521-26, 549-53). More specifically, Counts I, IV, VII, X, and XIII are brought to avoid and recover alleged preferential payments from Miles with respect to PFP and the Miles Entities; Counts II, III, V, VI, VIII, IX, XI, XII, XIV, and XV are brought to avoid and recover allegedly fraudulent transfers from Miles with respect to PFP and the Miles Entities; Count XVII alleges Miles was unjustly enriched by the MCAs; Count XX alleges Miles was unjustly enriched by the Equipment Leases; Count XXIV alleges Miles breached the Debtor's Operating Agreement; and Count XXIX alleges Miles's conduct with respect to the MCAs constituted a breach of his fiduciary duty. (*Id.*)

**<u>Trustee's Allegations</u>**

Miles is the partial owner of Physician Financial Partners, LLC ("<u>PFP</u>"),[8] owns 100% of MEC, 50% of Mittere, 50% of Northwinds, and possesses an interest in MMI, such that Miles owns or controls PFP and each of the Miles Entities. (*Id.* at ¶¶ 25, 27, 30, 32, 33, 35).[9]  PFP and each of the Miles Entities are insiders of the Debtor, each of whom alongside Zeroholdings,[10] another entity affiliated with Miles, received transfers from the Debtor within ninety (90) days, one (1) year, two (2) years, or four (4) years of the Petition Date, such that the transfers constituted preferential or fraudulent transfers. (*Id.* at ¶¶ 34, 36, 86-87, 93-96, 102-05, 111-14, 120-23, 129-32).[11]

The Debtor's operating agreement (the "<u>Operating Agreement</u>") provided that only those authorized by the Operating Agreement or the "Managers"[12] of the Debtor had the authority to

---

[8] PFP, which is partially owned by MEC, owns 95.01% of the Debtor.  The remaining 4.99% of the Debtor is owned by Radiation Business Solutions, Inc. (*Id.* at ¶ 21, 25).

[9] PFP and each of the Miles Entities are listed as unsecured creditors on the Debtor's amended Schedules E/F, which were signed by Miles as the Debtor's "Designated Manager." *See* Main Case Docket No. 82.  Miles testified that while no promissory notes or other customary documents evidence the Debtor's obligations to PFP and the Miles Entities for which transfers were made, a record of such obligations was kept in a ledger. (*Id.* at ¶ 84, Ex. B and Ex. D).  Miles failed to fully disclose the extent and nature of the transfers in both the Debtor's initial and amended Schedules, both of which he signed under penalty of perjury. (*Id.* at ¶ 76).  Miles merely stated that the contents of the ledger would reflect intercompany subleases of the Equipment and other property belonging to the Debtor, and note the intercompany transfers to PFP and the Miles Entities as loans from or to the Debtor. (*Id.* at Ex. C and Ex. D).

[10] Zeroholdings filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code on August 19, 2022. *See* Case No. 22-56502.

[11] Transfers were made to: Zeroholdings within two (2) and four (4) years of the Petition Date (*Id.* at ¶¶ 86-87), Northwinds within ninety (90) days, one (1) year, two (2) years, and four (4) years of the Petition Date (*Id.* at ¶¶ 93-96), MEC within ninety (90) days, one (1) year, two (2) years, and four (4) years of the Petition Date (*Id.* at ¶¶ 102-05), MMI within ninety (90) days, one (1) year, two (2) years, and four (4) years of the Petition Date (*Id.* at ¶¶ 111-14), Mittere within ninety (90) days, one (1) year, two (2) years, and four (4) years of the Petition Date (*Id.* at ¶¶ 120-23), and PFP within ninety (90) days, one (1) year, two (2) years, and four (4) years of the Petition Date (*Id.* at ¶¶ 129-32).

[12] The Operating Agreement provides that "Manager" includes those designated as such pursuant to the Operating Agreement or those who "succeed [Managers] in the capacity as Manager in accordance with the Operating Agreement and [O.C.G.A. §] 14-11-304." (*Id.* at Ex. A).

obligate the Debtor for any purpose. (*Id.* at ¶ 40 and Ex. A). Each "Manager" was also required to act "with such care as an ordinarily prudent person in a like position would use under similar circumstances." (*Id.* at ¶ 41). Further, a "Member or Manager" was required to only engage in business dealings that are "commercially reasonable and necessary or appropriate" for the Debtor. (*Id.* at ¶ 43). The Operating Agreement provides further that a "Member or Manager" may lend money to the Debtor if done on terms no less favorable than would be obtainable from an unaffiliated third party. (*Id.* at ¶ 44). Moreover, a "Manager" is not liable to the Debtor or "any Member for any loss or damage" sustained by the Debtor "except loss or damage resulting from such Manager's intentional misconduct or knowing violation of law or a transaction for which such Manager received a personal benefit" in violation of the Operating Agreement. (*Id.* at ¶ 42).

At all times relevant to the Amended Complaint, the Debtor was insolvent or unable to pay its debts as they became due. (*Id.* at ¶ 45). On the Petition Date, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (*Id.* at ¶¶ 61-64). The Debtor's petition was signed by Miles as the "Designated Manager of the Debtor" despite Miles never being an officer or manager of the Debtor. (*Id.*). Miles's involvement in the Main Case, however, lead several parties to request the appointment of a Chapter 11 trustee, which the Court ultimately granted due to "uncontradicted evidence" that "'significant amounts of cash'" were transferred from the Debtor's accounts to accounts held by the Miles Entities. (*Id.* at ¶¶ 65, 68, Ex. B, and Ex. E).[13] The Court found that evidence "clearly established that Miles caused at least $2,748,777.43 of net cash to be transferred" from the Debtor's bank accounts to the Miles Entities,[14] which Miles

---

[13] *See supra* note 1.

[14] The Debtor transferred approximately $45,000 to Northwinds in the ninety (90) days prior to the Petition Date, approximately $400,000 to Northwinds in the one (1) year prior to the Petition Date, approximately $600,000 to Northwinds in the two (2) years prior to the Petition Date, and approximately $3,000,000 to Northwinds in the four (4) years prior to the Petition Date. (*Id.* at ¶¶ 93-96). The Debtor transferred approximately $20,000 to MEC in the ninety (90) days prior to the Petition Date, approximately $100,000 to MEC in the one (1) year prior to the Petition

failed to fully disclose in the Debtor's Schedules. (*Id.* at ¶¶ 70-76). Additionally, Miles testified

that despite never being appointed or elected as the Debtor's manager, he made all of the Debtor's

financial decisions since the Debtor's formation. (*Id.* at ¶¶ 78-80).[15] Miles testified further that he

transferred funds from the Debtor to PFP and the Miles Entities without restriction or limitation

beginning as early as 2015; however, no documents evidencing any obligation of the Debtor to

PFP or the Miles Entities were produced. (*Id.* at ¶¶ 80-84, 88, 97, 106, 115, 124, 133).

Additionally, Miles obligated the Debtor on several agreements involving the Miles

Entities for which the Debtor received "no or less than reasonably equivalent value in return." (*Id.*

at ¶¶ 145). He signed a loan agreement with Newtek Small Business Finance, LLC ("Netwek")

as the "President" of MEC. (*Id.* at ¶¶ 145). Miles also signed a security agreement with Newtek

as the "Manager" of the Debtor, which made the Debtor the guarantor for Newtek's loan agreement

with MEC. (*Id.* at ¶¶ 149, 150). Miles admitted that he misrepresented his authority to Newtek to

obligate the Debtor as the guarantor for MEC's loan. (*Id.* at ¶¶ 152). Further, at the time Miles

signed the loan agreement and security agreement with Newtek, a substantial portion of the

Debtor's accounts receivable were encumbered, the Debtor lacked sufficient cash flow to sustain

its business, and the Debtor was no longer able to pay its debts as they matured. (*Id.* at ¶¶ 159-63).

---

Date, approximately $240,000 to MEC in the two (2) years prior to the Petition Date, and approximately $530,000
to MEC in the four (4) years prior to the Petition Date. (*Id.* at ¶¶ 102-05). The Debtor transferred approximately
$4,000 to MMI in the ninety (90) days prior to the Petition Date, approximately $10,000 to MMI in the one (1) year
prior to the Petition Date, approximately $30,000 to MMI in the two (2) years prior to the Petition Date, and
approximately $80,000 to MMI in the four (4) years prior to the Petition Date. (*Id.* at ¶¶ 111-14). The Debtor
transferred approximately $120,000 to Mittere in the ninety (90) days prior to the Petition Date, approximately
$200,000 to Mittere in the one (1) year prior to the Petition Date, approximately $360,000 to Mittere in the two (2)
years prior to the Petition Date, and approximately $400,000 to Mittere in the four (4) years prior to the Petition
Date. (*Id.* at ¶¶ 120-23). The Debtor transferred approximately $5,000 to PFP in the ninety (90) days prior to the
Petition Date, approximately $10,000 to PFP in the one (1) year prior to the Petition Date, approximately $45,000 to
PFP in the two (2) years prior to the Petition Date, and approximately $100,000 to PFP in the four (4) years prior to
the Petition Date. (*Id.* at ¶¶ 129-32).

[15] During his deposition on October 10, 2022, Miles testified that "from time to time" he was designated as a
manager of certain affairs of the Debtor. *See id.* at Ex. C.

Miles also executed the MCAs on the Debtor's behalf, purporting to be the Debtor's "Owner." (*Id.* at ¶¶ 168, 181, 196, 213). None of the funds from the MCAs were received by the Debtor. (*Id.* at ¶¶ 171, 184, 199, 216). Instead, most of the proceeds from the MCAs were directed to the Miles Entities, which left the Debtor insolvent. (*Id.* at ¶¶ 58, 172, 185, 200, 217, 522-24). More than 100% of the Debtor's accounts receivable were pledged in conjunction with the MCAs, which, alongside costly litigation[16] and the Debtor losing its sole revenue generating asset, made the Debtor unable to pay its obligations. (*Id.* at ¶¶ 52-57). Miles also caused the Debtor to enter the Equipment Leases, purporting to be the Debtor's owner, manager, or member in the documents memorializing the Equipment Leases. (*Id.* at ¶¶ 250, 266, 278, 293, 305). However, the equipment that was the subject of the Equipment Leases (the "Equipment") was not used in the Debtor's operations. (*Id.* at ¶ 315). Instead, Miles or Miles's affiliated entities, not the Debtor, used the Equipment and received or retained the revenue generated therefrom. (*Id.* at ¶¶ 316-17).

Further, Miles caused the Debtor to enter into a leasing agreement with Curepoint Dublin— an entity that Miles partially owns or created in light of the entity's registered office being Miles home address and the entity's registered agent being Miles's son. (*Id.* at ¶¶ 232-39). Upon information and belief, the monthly rent in the lease between the Debtor and Curepoint Dublin was not reflective of market rates and would have been lower had the transaction been conducted at "arms-length." (*Id.* at ¶¶ 243-45). Miles lacked the authority to execute any of the agreements he entered on the Debtor's behalf—all of which were detrimental or unbeneficial to the Debtor. (*Id.* at ¶¶ 78, 143-45, 155, 170, 183, 198, 215, 233, 257, 268, 315-17, 475). Attached to the Amended Complaint as exhibits in support of the allegations therein are a copy of the Debtor's

---

[16] Beginning in 2018, the Debtor became involved in numerous state court actions concerning the misappropriation of its funds. (*Id.* at ¶¶ 50-51).

Operating Agreement and copies of transcripts from the Hearing, the Continued Hearing, Miles's Deposition, and the Section 341 Meeting of Creditors. (*Id.* at ¶¶ 20, 23, 26, 28, 69).

<u>**DISCUSSION**</u>

### a. Standard of Review

Pursuant to FRCP 12(b)(1) and 12(h)(3), incorporated herein under Federal Rule of Bankruptcy Procedure ("<u>Rule</u>") 7012(b), dismissal of a complaint is required if a court determines "at any time" that it lacks subject matter jurisdiction over the claim.  A bankruptcy court's subject-matter jurisdiction is limited to any or all cases under the Bankruptcy Code and any or all proceedings arising in or related to a case under the Bankruptcy Code. 28 U.S.C. § 1334(a) and (b); *see also* 28 U.S.C. § 157(a).  An action is sufficiently related to a bankruptcy case if the outcome, "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in *any way* impacts upon the handling and administration of the [bankrupt's] estate." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990)(emphasis added).

As a prerequisite for subject matter jurisdiction, a party asserting standing must allege "an actual case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493-94 (1974).  Thus, a plaintiff must establish its standing to bring suit on a claim, which may be challenged through a motion to dismiss for lack of standing is "properly brought pursuant to FRCP 12(b)(1) because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3rd Cir. 2007); *see also Roberts v. Swearingen*, 358 F.Supp.3d 1341, 1346 (M.D. Fla. 2019)(citation omitted).  A party who is neither the debtor nor the trustee but seeks to enforce a claim must establish it has standing to do so by showing they (1) have been appointed, and (2) are a representative of the estate. *In re*

*Am.-CV Station Grp., Inc.*, 659 B.R. 229, 234 (Bankr. S.D. Fla. 2024)(citation omitted); *In re APF Co.*, 264 B.R. 344, 353 (Bankr. D. Del. 2001)(citation omitted).

Alternatively, dismissal of a complaint is appropriate under FRCP 12(b)(6) when the complaint fails "to state a claim upon which relief can be granted." FRCP 12(b)(6) is viewed through FRCP 8(a), incorporated herein under Rule 7008(a). Pursuant to FRCP 8(a) a pleading must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."[17] Under this standard, "to survive a motion to dismiss, a complaint must now contain factual allegations that are 'enough to raise a right to relief above the speculative level.'"[18] In addition, pursuant to FRCP 9(b), incorporated herein under Rule 7009, fraud must be plead with particularity and, although malice and intent may be alleged generally, facts regarding time, place, and content of any alleged misrepresentations must be provided.[19]

In evaluating a motion to dismiss, the inquiry is limited "to the legal feasibility of the complaint and whether it contains facts and not just labels or conclusory statements." *In re Lafayette*, 561 B.R. 917, 922 (Bankr. N.D. Ga. 2016). The Court "must take the factual allegations of the complaint as true and make all reasonable inferences from those facts to determine whether the complaint states a claim that is plausible on its face." *In re American Berber, Inc.*, 625 B.R. 125, 128 (Bankr. N.D. Ga. 2020)(citations omitted); *see also In re Adetayo*, 2020 WL 2175659, *1 (Bankr. N.D. Ga. May 5, 2020)(citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give

---

[17] FRCP 10, incorporated herein under Rule 7010, provides in relevant part that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoted in *Berry v. Budget Rent A Car Systems, Inc.*, 497 F.Supp.2d 1361, 1364 (S.D. Fla. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

[19] *United States v. Baxter Intern., Inc.*, 345 F.3d 866, 833 (11th Cir. 2003); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997); *In re Eden*, 584 B.R. 795, 803-04 (Bankr. N.D. Ga. 2018).

rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679.  A claim has "facial plausibility" when the facts alleged permit a reasonable inference that the defendant is liable on the grounds asserted. *In re Seligman*, 478 B.R. 497, 501 (Bankr. N.D. Ga. 2012)(citations omitted).  In cases "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  In addition, dismissal is proper "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### b.  Analysis

### i.    Disclosure and Retention of Claims

Miles asserts that under FRCP 12(b)(1) the Motion should be granted as the Trustee lacks standing to assert the state law claims against him because the state law claims were not retained in the Plan.  In the Response, the Trustee contends that he has standing to bring the claims asserted herein based on the terms of the Disclosure Statement and the Plan as plead in the Amended Complaint.  Pursuant to 11 U.S.C. § 1123(b)(3)(B), a Chapter 11 plan may provide for "the retention and enforcement . . . by a representative of the estate appointed for such purpose, of any such claim or interest."  However, confirmation of a plan bars the prosecution of actions that are not specifically identified in the plan. *In re Value Music Concepts, Inc.*, 329 B.R. 111, 118 (Bankr. N.D. Ga. 2005).  A Chapter 11 plan need not specifically identify potential defendants against whom causes of action are retained, but rather "sufficiently identif[y] the types or categories of retained causes of action and [give] adequate notice of the reservation to creditors." *Id.* at 120.

14

Here, the Disclosure Statement discloses many of the very factual allegations detailed in the Amended Complaint. More specifically, the Disclosure Statement discloses Miles's alleged role in causing the Debtor to procure the Equipment Leases and the MCAs. The Disclosure Statement also expressly preserves the Retained Causes of Action as detailed in the Plan. Further, the Plan provides in relevant part that on the Effective Date of the Plan the Debtor and its Estate "shall transfer," among other things, the Debtor's Retained Causes of Action to the Liquidation Trust to be administered by the Trustee in his capacity as the liquidating trustee. Included in the Retained Causes of Action were "Claims or Causes of Action" against Phillip Miles or that are the subject of a then pending adversary proceeding.

"Causes of Action" is broadly defined in the Plan to include "each and every Claim" directly or indirectly assertable by the Debtor or its Estate "whether arising before, on or after the Petition Date, in contract or tort . . . ." Additionally, "Causes of Action" includes any and all actions "avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code . . . ." The Trustee initiated this adversary proceeding against Miles, among others, on October 11, 2023—approximately two (2) months before the Plan was confirmed on December 18, 2023. Thereafter, the Plan became effective on December 29, 2023, such that the Trustee was then appointed as the liquidating trustee of the Debtor and the Estate's Liquidation Trust as provided in the Plan.

Consequently, this adversary proceeding not only includes causes of action against Phillip Miles, but was also pending on the confirmation date of the Plan. The Trustee's claims in this matter concern avoidance actions and actions in contract and tort, and the Plan reserves any and all causes of action against Miles or that are the subject of a then pending adversary proceeding. Thus, the causes of action asserted herein were expressly retained and identified in the Plan, and

15

adequate notice of the same was provided through the Disclosure Statement. *In re Value Music Concepts, Inc.*, 329 B.R. at 120.  Further, the Trustee has standing to assert the state law claims asserted herein because he was appointed as the representative of the Debtor's Estate by the Plan. *In re Am.-CV Station Grp., Inc.*, 659 B.R. at 234; *In re APF Co.*, 264 B.R. at 353.

### ii.    Assignment of Claims

In the Motion, Miles also argues that under Georgia law the Trustee cannot assert tort claims belonging to the Debtor as the tort claims are non-assignable.  Georgia law provides that "[a] right of action for personal torts . . . or for injuries arising from fraud to the assignor may not be assigned" O.C.G.A. § 44-12-24.  However, pursuant to Section 541(a)(1) of the Bankruptcy Code, "all legal or equitable interests of the debtor in property as of the commencement of the case."  Section 541(c)(1)(A) provides further that a debtor's interest in property becomes property of the estate "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law that restricts or conditions transfer of such interest by the debtor."  Thus, despite Georgia's anti-assignment statute, a cause of action becomes part of the bankruptcy estate "by the express preemptive operation of federal law." *Denis v. Delta Air Lines, Inc.*, 248 Ga.App. 377, 379 (2001).

Further, under Section 1123(b)(3)(B) a debtor's plan of reorganization may provide for "the retention and enforcement . . . by a representative of the estate appointed for such purpose, of any such claim or interest" belonging to the debtor or bankruptcy estate.  Accordingly, a liquidating trustee may assert claims on behalf of a liquidation trust where the debtor remained in possession of such assets until transfer of the same to the liquidation trust in the debtor's confirmed plan. *See In re Avado Brands, Inc.*, 358 B.R. 868, 883 (Bankr. N.D. Tex. 2006)(finding O.C.G.A. § 44-12-

144 is preempted by the Bankruptcy Code); *see also In re Am.-CV Station Grp., Inc.*, 659 B.R. at 233-34.

Here, as noted above, the tort claims alleged by the Trustee became property of the Debtor's Estate upon the commencement of the Main Case. *See* 11 U.S.C. § 541(a)(1). The claims were then expressly reserved in and transferred by the Debtor's confirmed Plan to the Liquidation Trust for which the Trustee is the liquidating trustee. The Trustee now merely asserts the claims expressly reserved in the confirmed Plan as allowed by Section 1123(b)(3)(B). Therefore, to the extent Miles now raises any argument regarding the Trustee's standing to assert tort claims on the basis of non-assignability,[20] said arguments are unpersuasive in light of both bankruptcy courts and Georgia courts holding that Georgia's anti-assignment statute is preempted by the Bankruptcy Code. *In re Avado Brands, Inc.*, 358 B.R. at 883; *see also In re Am.-CV Station Grp., Inc.*, 659 B.R. at 233-34.

### iii.    Timeliness of the Motion

In the Response, the Trustee contends that the Motion is untimely to the extent it seeks dismissal under FRCP 12(b)(6). In his Reply, Miles argues that the substitution of the Trustee in his capacity as the liquidating trustee revived Miles's right to seek dismissal under FRCP 12(b)(6). Typically, a motion to dismiss for failure to state a claim must be filed before a party files an answer to a complaint. *In re Bauer Agency, Inc.*, 443 B.R. 918, 922 (Bankr. N.D. Ga.

---

[20] Miles cites several cases in support of his argument that the claims are non-assignable, primarily relying upon *Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487 (3d Cir. 1997). However, *Integrated Sols., Inc.*, is readily distinguishable from the case at hand as that case concerns whether a trustee may *sell* prejudgment tort claims under 11 U.S.C. § 363(b). 124 F.3d at 491. Further, the court in *Integrated Sols., Inc.*, distinguished instances where Congress intends for the Bankruptcy Code to preempt state law from instances where Congress does not intend to do so by juxtaposing the difference in language used in sections like Sections 541 and 1123 with the language used in Section 363(b). 124 F.3d at 494. Moreover, notwithstanding the Eleventh Circuit's alleged silence on this issue, Georgia courts have previously held that Georgia's anti-assignment statute is preempted by the Bankruptcy Code in cases such as this. *Denis*, 248 Ga.App. at 379.

2011); *see also United States v. Vico*, 360 F. Supp. 3d 1328, 1333 (S.D. Fla. 2019). Nevertheless, where "new matter" is plead giving rise to a defense under FRCP 12, "leave to file an amended complaint may revive the defendant's right to interject a motion on those grounds." *In re Dorsey*, 497 B.R. 374, 381 (Bankr. N.D. Ga. 2013)(citation and internal quotations omitted). The "new matter" must give rise to a defense that did not exist prior to the amendment to revive a party's right to assert a motion to dismiss under FRCP 12(b)(6). *Id.* However, where a motion to dismiss is untimely, a court may instead construe a motion to dismiss as a motion for judgment on the pleadings under FRCP 12(c). *Vico*, 360 F. Supp. 3d at 1333.[21]

Here, Miles filed an Answer in response to the Initial Complaint. Thereafter, the Trustee was substituted as the plaintiff in this matter in his capacity as liquidating trustee as provided in the Plan. Following the Trustee's substitution as plaintiff herein, he filed the Amended Complaint, which asserts the same claims as the Initial Complaint to which Miles responded. The Amended Complaint also added more specificity to some of the factual allegations made in the Initial Complaint. Thus, the claims and factual allegations in the Amended Complaint relate back to the Initial Complaint that Miles answered. Fed. R. Civ. P. 15(c)(1)(B).[22] Consequently, no new claims or facts have been alleged by the Trustee to constitute "new matter" to revive Miles's right to file the Motion. *In re Dorsey*, 497 B.R. at 381.

---

[21] "Granting judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023). Further, a motion for judgment on the pleadings is assessed under the same legal standard as a motion to dismiss under FRCP 12(b)(6). *Mobile Telecommunications Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016). Accordingly, courts accept as true all material facts alleged in the non-moving party's pleadings, and view said facts in the light most favorable to the non-moving party. *Thompson*, 67 F.4th at 1305.

[22] *See In re Bauer Agency, Inc.*, 443 B.R. at 922 ("[A]ny required amendment to increase the specified amount of avoidable transfers and to specify their dates and amounts would relate back under [FRCP] 15(c)(1)(B). Such an amendment would clearly assert a claim arising out of the conduct, transactions, and occurrences set out in the original complaint.").

Moreover, to the extent that Miles argues that the Trustee in his capacity as liquidating trustee constitutes a party being added to this matter, this argument also must fail. In both his capacity as Chapter 11 trustee and liquidating trustee, the Trustee has only asserted claims to the extent that he may do so on behalf of the Debtor's Estate. *See* 11 U.S.C. §§ 541(a)(1) and 1123(b)(3)(B). In other words, the Trustee's substitution in his capacity as liquidating trustee herein also does not give rise to "new matter" to revive Miles's right to file the Motion. *In re Dorsey*, 497 B.R. at 381. Therefore, the Court concludes that the Motion is untimely to be considered as a motion to dismiss under FRCP 12(b)(6), and instead assesses the Motion as a motion for judgment on the pleadings under FRCP 12(c). *See Vico*, 360 F. Supp. 3d at 1333.

### iv. Preferential Payments

Miles contends that Counts I, IV, VII, X, and XIII, in which the Trustee seeks to avoid and recover preferential payments, should be dismissed as none of the Debtor's property was transferred to Miles for the Trustee to plausibly allege that a transfer occurred. In the Response, the Trustee states that in the Amended Complaint he alleges that Miles caused the Debtor to transfer money to entities that Miles either owned or controlled, such that Miles benefitted from the transfers.

#### a. Legal Standard

Pursuant to 11 U.S.C. § 547(b), a trustee may avoid a pre-petition transfer of property of the debtor that was (1) to or for the benefit of a creditor; (2) on account of an antecedent debt; (3) made while the debtor was insolvent; (4) on or within ninety (90) days the filing of the petition; and (5) which enabled the creditor to receive more than it would have received in a liquidation case. Section 547(f) provides that a debtor is presumed insolvent on and during the ninety (90) days immediately preceding the date of the filing of the petition. The Bankruptcy Code defines insolvency as a "financial condition such that the sum of such entity's debts is greater than all of

such entity's property, at a fair valuation." 11 U.S.C. § 101(32).  Thus, while a plaintiff need not prove insolvency in their pleadings, they must allege enough facts to raise a plausible claim that the debtor was insolvent on the date of the transfers. *See In re Menser*, No. 18-65681-JWC, 2021 WL 4484894, at *5 (Bankr. N.D. Ga. Sept. 30, 2021).  "A debt is 'antecedent' to the transfer sought to be avoided under [Section] 547(b) if it is pre-existing or is incurred before the transfer." *In re Tanner Fam., LLC*, 556 F.3d 1194, 1196 (11th Cir. 2009)(emphasis in original).

Further, "Section 547 limits the trustee's avoidance powers for preferential transfers that occur "before ninety days and one year before the date of filing the petition" to creditors who were an insider of the debtor." *In re Oconee Reg'l Health Sys., Inc.*, 621 B.R. 64, 77 (Bankr. M.D. Ga. 2020)(citing 11 U.S.C. § 547(b)(4)).  Whether a creditor is an insider "is to be determined on the exact date of the transfer." *In re Toy King Distributors, Inc.*, 256 B.R. 1, 97-98 (Bankr. M.D. Fla. 2000).  Courts typically assess (1) the closeness of the relationship between the parties and (2) whether the transaction was negotiated at arm's length when determining whether a creditor was an insider of the debtor. *In re Alpha Protective Servs., Inc.*, 531 B.R. 889, 901 (Bankr. M.D. Ga. 2015)(citations omitted).

Unless creditors are to receive a 100% distribution under a debtor's plan of reorganization, "any unsecured creditor who receives a payment during the preference period has received more than it would under a hypothetical Chapter 7 liquidation" *In re Oconee Reg'l Health Sys., Inc.*, 621 B.R. at 79 (citations and internal quotation omitted).  Additionally, 11 U.S.C. § 550(a) provides that should a transfer be avoided pursuant to Section 544, 547, or 548, the trustee may recover the property transferred or the value of such property from (1) the initial transferee or entity for whose benefit the transfer was made; or (2) any immediate or mediate transferee of the initial transferee. However, where a preferential transfer avoided under Section 547(b) was made to an insider of

the debtor between ninety (90) days and one (1) year before the filing of the petition, a trustee may not recover from a transferee that is not an insider. 11 U.S.C. § 550(c)(2).

### b. Counts I, IV, VII, X, and XIII

In the Amended Complaint, the Trustee seeks to avoid and recover preferential payments he alleges were made to PFP and the Miles Entities. More specifically, he seeks to avoid preferential payments made to MEC in Count I, Northwinds in Count IV, MMI in Count VII, Mittere in Count X, and PFP in Count XIII. In support thereof, the Trustee alleges that Miles caused the Debtor to transfer funds as follows: to MEC approximately $20,000 in the ninety (90) days prior to the Petition Date and approximately $100,000 in the one (1) year prior to the Petition Date; to Northwinds approximately $45,000 in the ninety (90) days prior to the Petition Date and approximately $400,000 in the one (1) year prior to the Petition Date; to MMI approximately $4,000 in the ninety (90) days prior to the Petition Date and approximately $10,000 in the one (1) year prior to the Petition Date; to Mittere approximately $120,000 in the ninety (90) days prior to the Petition Date and approximately $200,000 in the one (1) year prior to the Petition Date; and to PFP approximately $5,000 in the ninety (90) days prior to the Petition Date and approximately $10,000 in the one (1) year prior to the Petition Date.

The Trustee alleges that based on financial records of the Debtor, PFP, and the Miles Entities, the proceeds of many of the MCAs, for which the Debtor's accounts receivable were pledged, were directed to PFP and the Miles Entities. The Trustee also alleges, and attaches a transcript in confirmation thereof, that the Court previously determined that Miles caused upwards of $2,000,000 to be transferred out of the Debtor's bank accounts. Therefore, the Trustee has sufficiently plead that a transfer of the Debtor's property occurred.

In the Amended Complaint, the Trustee explains that Miles testified that the transfers listed above were made in accordance with debts the Debtor allegedly owed based on a ledger memorializing the same.  Therefore, the Trustee has sufficiently plead that the transfers to PFP and the Miles Entities were made on account of antecedent debt, presuming any such obligation was owed to PFP and the Miles Entities. *In re Tanner Fam.*, LLC, 556 F.3d at 1196.  In the Amended Complaint, the Trustee also contends that all of the Debtor's accounts receivable were encumbered due to Miles obligating the Debtor on, among other things, the MCAs.  He avers further that, alongside the Debtor losing its only revenue generating asset and the Debtor's involvement in various litigation, beginning in 2018, the Debtor's accounts receivable being fully encumbered prevented the Debtor from paying its obligations as they became due.

Based on the foregoing, the Court need not rely solely on the presumption of insolvency under Section 547(f) because the Trustee has sufficiently plead that the Debtor was insolvent at the time of the transfers. *See In re Menser*, 2021 WL 4484894, at *5.  As per the Debtor's amended Schedules E/F, PFP and each of the Miles Entities are listed as unsecured creditors of the Debtor. Moreover, the Debtor's Plan does not provide for a 100% distribution to creditors, such that the transfers to PFP and the Miles Entities caused them to receive more than they would in a Chapter 7 liquidation. *In re Oconee Reg'l Health Sys., Inc.*, 621 B.R. 64, 79.

The Trustee also argues that PFP and the Miles Entities are all insiders of the Debtor.  He states that PFP owns 95.01% of the Debtor and is also the sole member and manager of the Debtor. The Trustee adds that PFP is partially owned by MEC, which is entirely owned by Miles. Moreover, the Trustee asserts that Miles owns 50% of Mittere, 50% of Northwinds, and possesses an interest in MMI.  Further, the Trustee points to Miles's testimony that he was designated or acted as the Debtor's manager "from time to time."  He states that Miles testified, in relevant part

22

that, he transferred funds from the Debtor to PFP and the Miles Entities without restriction. Thus, when assessing the typical factors to determine whether Miles, PFP, and the Miles Entities are insiders of the Debtor, both factors weigh heavily in favor of Miles, PFP, and the Miles Entities being insiders of the Debtor based on the Trustee's allegations.

First, the Trustee asserts that Miles had control over the Debtor, such that he directed transfers on the Debtor's behalf to entities he controlled, owned, or otherwise possessed an interest in. He adds that Miles has held himself out as the manager of the Debtor and acquiesced to the same through his testimony and several of the Debtor's filings, which he signed as the Debtor's "Designated Manager." Second, the Trustee contends that none of the transfers at issue here could have possibly been negotiated at arm's length. He explains that Miles, who either owns, controls, or possesses some interest in the Debtor, PFP, and each of the Miles Entities, made the cash transfers from the Debtor to PFP and the Miles Entities. Consequently, the Trustee has sufficiently plead that the closeness of the relationship between Miles and the entities and the nature of the transaction are both such that Miles, PFP, and the Miles Entities were insiders of the Debtor. *In re Alpha Protective Servs., Inc.*, 531 B.R. 889, 901. Accordingly, the Trustee has sufficiently plead each element to state a claim for avoidable preferential transfers under Section 547(b) for each of the transfers made to PFP and the Miles Entitles that the Trustee alleges were preferential in Counts I, IV, VII, X, and XIII of the Amended Complaint.

Here, Miles only disputes whether transfers occurred to himself—not whether transfers were made to PFP and the Miles Entities or whether those transfers were preferential. However, under Section 550(a), the Trustee may recover for preferential transfers from Miles if the transfers were made for his benefit or he was an immediate or mediate transferee of PFP and the Miles Entities with respect to the Counts I, IV, VII, X, and XIII of the Amended Complaint. As detailed

above, the Trustee has made allegations sufficient to show that Miles is an insider of the Debtor

considering he was the Debtor's "Designated Manager" and freely accessed and transferred assets

belonging to the Debtor.  Consequently, should the Trustee prove successful in his claims against

PFP and the Miles Entities, recovery from Miles would not be prohibited by Section 550(c)(2).

Further, the Trustee has made numerous factual allegations regarding Miles's control over the

Debtor, PFP, and the Miles Entities that if taken as true permit the reasonable inference that Miles

derived a benefit from the preferential transfers. Therefore, when making reasonable inferences

and viewing the factual allegations in favor of the Trustee, the Trustee has sufficiently plead that

the preferential transfers alleged in Counts I, IV, VII, X, and XIII of the Amended Complaint were

made for the benefit of Miles such that he may be found liable for the same. *In re American Berber,

Inc.*, 625 B.R. at 128.[23]

### v.    Fraudulent Transfers

In the Motion, Miles argues that Counts II, III, V, VI, VIII, IX, XI, XII, XIV, and XV, in

which the Trustee seeks to avoid and recover fraudulent transfers, should be dismissed because no

transfer was made to him, and he is not a creditor in the Case.   In the Response, the Trustee

contends that in the Amended Complaint he alleges that Miles caused the Debtor to transfer money

to entities that Miles either owned or controlled, such that Miles benefitted from the transfers.

### a.  Legal Standard

A trustee may avoid transfers made with actual intent to hinder, delay, or defraud, creditors

under 11 U.S.C. § 548(a)(1)(A) or under 11 U.S.C. § 544 and O.C.G.A. § 18-2-74(a).  In either

---

[23] To the extent that either party may suggest otherwise, the Court refrains from holding that ownership and control
of an entity alone are sufficient to establish that a party had actual access to a benefit derived from the alleged
preferential transfer of the Debtor's property. *See In re Green Field Energy Servs., Inc.*, 594 B.R. 239, 287-89
(Bankr. D. Del. 2018).  Here the Court merely assesses whether sufficient factual allegations were made in the
Amended Complaint for the Court to reasonably infer that the alleged transfers were made for Miles's benefit under
Section 550(a)(1). *In re Seligman*, 478 B.R. at 501.

case, to state a claim for an actual fraudulent transfer a plaintiff must plead "(1) a transfer; (2) of an interest of property of the debtor; (3) made with actual intent to hinder, delay, or defraud a creditor." *In re Beaulieu Grp., LLC*, No. 17-41677-BEM, 2021 WL 4469928, at *28 (Bankr. N.D. Ga. Sept. 29, 2021). Fraudulent intent may be plead by a plaintiff "pleading factual allegations that would support the existence of traditional badges of fraud." *In re S. Home & Ranch Supply, Inc.*, No. ADV 13-1043, 2013 WL 7393247, at *3 (Bankr. N.D. Ga. Dec. 20, 2013). Badges of fraud include facts such as (1) the transfer being made to an insider; (2) the debtor retaining actual possession or control of the allegedly transferred property; (3) the transfer was concealed; (4) the transfer was made after the debtor was sued or threatened with the same; (5) the debtor received less than reasonably equivalent value for the transferred property; and (6) the transfer was made while the debtor was insolvent or the debtor became insolvent shortly thereafter. *Id.*

This Court has previously held that more than a single badge of fraud must be plead for a plaintiff to sufficiently plead fraudulent intent when a plaintiff seeks to avoid an actual fraudulent transfer. *See In re Beaulieu Grp., LLC*, 2021 WL 4469928, at *31. Alternatively, constructively fraudulent transfers are avoidable under 11 U.S.C. § 548(a)(1)(B) or 11 U.S.C. § 544 and O.C.G.A. §§ 18-2-74 and 18-2-75. In either case, to state a claim for a constructive fraudulent transfer a plaintiff must plead "(1) a transfer; (2) of an interest of property of the debtor; and (3)(a) the debtor was insolvent at the time of the transfer or became insolvent as a result; or (b) the debtor received less than reasonably equivalent value for the transfer." *In re Beaulieu Grp., LLC*, 2021 WL 4469928, at *32. Information about the value the debtor received in exchange for the transfer must be plead for a plaintiff to plead a lack of reasonably equivalent value. *In re Menser*, 2021 WL 4484894, at *6. Moreover, while actual fraudulent claims must be plead with particularity, "'constructive fraudulent transfer claims are governed by [FRCP] 8 and 12(b)(6) and not the

heightened [FRCP] 9(b) pleading standard.'" *In re Haven Tr. Bancorp, Inc.*, 461 B.R. 910, 913 (Bankr. N.D. Ga. 2011)(quoting *In re Charys Holding Co., Inc.*, 443 B.R. 628, 632 n.2 (Bankr. D. Del. 2010); *see also U.S. Cap. Funding VI, Ltd v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1356 (S.D. Ga. 2015).

### b. Counts II, III, V, VI, VIII, IX, XI, XII, XIV, and XV

In the Amended Complaint, the Trustee seeks to avoid and recover fraudulent transfers he alleges were made to PFP and the Miles Entities. More specifically, the Trustee seeks to avoid payments made to MEC in Counts II and III, Northwinds in Counts V and VI, MMI in Counts VIII and IX, Mittere in Counts XI and XII, and PFP in Counts XIV and XV. In support thereof, the Trustee alleges that Miles caused the Debtor to make the following payments: to MEC approximately $240,000 in the two (2) years prior to the Petition Date and approximately $530,000 in the four (4) years prior to the Petition Date; to Northwinds approximately $600,000 in the two (2) years prior to the Petition Date and approximately $3,000,000 in the four (4) years prior to the Petition Date; to MMI approximately $30,000 in the two (2) years prior to the Petition Date and approximately $80,000 in the four (4) years prior to the Petition Date; to Mittere approximately $360,000 in the two (2) years prior to the Petition Date and approximately $400,000 in the four (4) years prior to the Petition Date; and to PFP approximately $45,000 in the two (2) years prior to the Petition Date and approximately $100,000 in the four (4) years prior to the Petition Date.

The Trustee maintains that at the Continued Hearing the Court found that Miles caused the transfer of funds from the Debtor's bank accounts to entities owned or controlled by Miles. Thus, the only question that remains with respect to the claims that the above transfers were actually fraudulent, is whether said transfers were made with fraudulent intent.

As noted above, the Trustee has sufficiently plead facts to suggest that each of the transferees (PFP and the Miles Entities) are insiders of the Debtor. Further, the Trustee has sufficiently plead that the Debtor was insolvent at the time of the transfers or as a result of the transfers. Moreover, the Trustee maintains that the Debtor had no obligation to make transfers to PFP and the Miles Entities. In fact, he claims that the Debtor transferred more funds to PFP and the Miles Entities than it received in return despite no documents being provided to support that the Debtor had any obligation to do so. The Trustee also alleges that Miles failed to fully disclose the extent and nature of the transfers to PFP and the Miles Entities on both the Debtor's initial and amended Schedules, which Miles signed under penalty of perjury. Therefore, the Trustee has made enough factual allegations that when taken as true suggest at least three (3) traditional badges of fraud have been plead to establish fraudulent intent. *In re S. Home & Ranch Supply, Inc.*, 2013 WL 7393247, at *3.

As stated above, Miles contends that Counts II, III, V, VI, VIII, IX, XI, XII, XIV, and XV should be dismissed because no transfer was made to him and he is not a creditor in the Main Case. However, for similar reasons detailed above, both of Miles's arguments fail. Section 550(a) permits the Trustee to recover from Miles for fraudulent transfers avoided under Section 544 if the transfers were made for Miles's benefit or he was an immediate or mediate transferee of PFP and the Miles Entities with respect to the Counts II, III, V, VI, VIII, IX, XI, XII, XIV, and XV of the Amended Complaint. Additionally, the Trustee sufficiently plead that Miles is an insider of the Debtor considering, among other things, he was the Debtor's "Designated Manager."

Consequently, should the Trustee prove successful in his claims against PFP and the Miles Entities, recovery from Miles would not be prohibited by Section 550(c)(2). Further, the Trustee has made numerous factual allegations regarding Miles's control over the Debtor, PFP, and the

Miles Entities that if taken as true permit the reasonable inference that Miles has derived a benefit from the transfers. Therefore, when making reasonable inferences and viewing the factual allegations in favor of the Trustee, the Trustee has sufficiently plead that the fraudulent transfers alleged in Counts II, III, V, VI, VIII, IX, XI, XII, XIV, and XV of the Amended Complaint were made for the benefit of Miles such that he may be found liable for the same. *In re American Berber, Inc.*, 625 B.R. at 128.[24]  The Court need not inquire whether the Trustee's well-plead allegations also state claims for constructively fraudulent transfers in light of the Trustee having sufficiently plead claims for fraudulent transfer in Counts II, III, V, VI, VIII, IX, XI, XII, XIV, and XV of the Amended Complaint under the more stringent standard to state claims for actual fraudulent transfers. *See In re Haven Tr. Bancorp, Inc.*, 461 B.R. at 913.

### vi.    Breach of Contract

Miles contends that Count XXIV, in which the Trustee asserts that Miles breached the Operating Agreement, should be dismissed as he was not a party to the Operating Agreement.  In the Response, the Trustee argues that Miles's conduct breached the Operating Agreement to the extent he was authorized to act as the Debtor's manager.

### a.    Legal Standard

"Under Georgia law, the elements of a breach of contract claim are: (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Williams v. Corp. of Mercer Univ.*, 542 F. Supp. 3d 1366 (M.D. Ga. 2021)(citations and internal quotations omitted).  Thus, plaintiffs asserting a breach of contract claim "must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Brooks v. Branch Banking & Trust Co.*, 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015).  Generally, a contract is only binding upon parties

---

[24] *See* supra note 23.

thereto. *Cajun Glob. LLC v. Swati Enterprises, Inc.*, 283 F. Supp. 3d 1325 (N.D. Ga. 2017)(quoting

*Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011)); *Sims v. Bayside Cap.*,

Inc., 327 Ga. App. 47, 53 (2014).

However, "traditional principles of state law allow a contract to be enforced by or against

nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation

by reference, third-party beneficiary theories, waiver[,] and estoppel." *Arthur Andersen LLP v.

Carlisle*, 556 U.S. 624, 631 (2009)(citation and internal quotations omitted).[25]  A nonparty may

assume a contract expressly in writing or by implication where his conduct manifests an intent to

become bound. *Dinner Bell Café, Inc. v. N. Am. Bancard*, LLC, No. 1:15-CV-3059-SCJ, 2016 WL

4257768, at *4 (N.D. Ga. Aug. 4, 2016) (citing *Cent. of Georgia Ry. Co. v. Woolfolk Chem. Works,

Ltd.*, 122 Ga. App. 789, 792 (1970)).  Courts must consider all circumstances when assessing

whether a third-party has manifested an intent to be bound by a contract, "such as the subject

matter of the contract, the third person's acts and words, whether he acquiesced in the terms of the

contract, performed its obligations, or accepted its benefits." *Id.*

**b.  Count XXIV**

Here, Miles does not dispute that the Operating Agreement is a valid contract.  Instead, he

disputes that he was a party to it.  In response, the Trustee points to Miles's conduct to suggest that

he was in fact party to the Operating Agreement.  More specifically, the Trustee alleges that Miles

signed the Debtor's Schedules and voluntary petition as the Debtor's "Designated Manager."

Further, the Trustee has alleged that Miles testified that from "time to time" he was designated as

a manager for the Debtor and that, beginning in 2015, he consistently transferred funds from the

---

[25] Although the Trustee does not allege nor does the Court find that the doctrine of alter ego applies, in the Motion
and Reply, Miles suggests that alter ego must be plead as an independent cause of action.  However, the doctrine of
alter ego exists merely as a means through which liability may be imposed on an underlying cause of action. *In re
Geer*, 522 B.R. 365, 392 (Bankr. N.D. Ga. 2014); *see also Peacock v. Thomas*, 516 U.S. 349, 353-54 (1996).

Debtor's accounts to PFP and the Miles Entities.  Consequently, Miles's argument that the Trustee has not made sufficient allegations to show that he is a party to the Operating Agreement is unpersuasive.  The Trustee has made sufficient factual allegations for the Court to reasonably infer that Miles's conduct and words manifested his intent to be bound by the Operating Agreement and he accepted benefits flowing therefrom, such that he assumed the Operating Agreement by implication. *Dinner Bell Café, Inc.*, 2016 WL 4257768, at *4.

Accordingly, to state a claim for breach of contract with respect to the Operating Agreement, the Trustee must still assert that Miles breached a particular provision of the Operating Agreement and damages resulted therefrom. *Brooks*, 107 F. Supp. 3d at 1296.  The Trustee contends that Miles breached Section 5.6 of the Operating Agreement.  Section 5.6 of the Operating Agreement requires each manager of the Debtor to act "with such care as an ordinarily prudent person in a like position would use under similar circumstances."  He argues that this provision of the Operating Agreement was breached by Miles obligating the Debtor on the MCAs, which fully encumbered the Debtor's accounts receivable for little to no value in return.  Thus, the Trustee has alleged both a specific contractual provision of the Operating Agreement that Miles's conduct breached and damages resulting therefrom, such that he has sufficiently plead his breach of contract claim in Count XXIV of the Amended Complaint. *Brooks*, 107 F. Supp. 3d at 1296.

### vii.    Unjust Enrichment

In the Motion, Miles argues that Counts XVII and XXIX, in which the Trustee seeks to recover for unjust enrichment, should be dismissed because no benefit was conferred to him and the Trustee alleges a contract exists between Miles and the Debtor precluding recovery for an unjust enrichment claim.  In the Response, the Trustee contends that in the Amended Complaint he alleges that Miles caused the Debtor to transfer money to entities that Miles either owned or controlled, such that Miles benefitted from the transfers.

30

### a. Legal Standard

Unjust enrichment provides a path for recovery of the value of benefits conferred on the opposing party in the absence of an enforceable express contract. *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 28 (1997). To state a claim for unjust enrichment, a plaintiff must allege facts to show (1) there is no legal contract; (2) the defendant has been conferred a benefit by plaintiff; and (3) the defendant equitably ought to return or compensate for the benefit. *Wachovia Ins. Servs., Inc. v. Fallon*, 299 Ga. App. 440, 449, (2009). In addition, "the party conferring the ... things of value must act with the expectation that the other will be responsible for the cost." *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga. App. 124, 131(2001). Under Georgia law, a party "cannot recover under both a breach of contract and unjust enrichment theory, but these claims may be plead in the alternative." *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1330–31 (N.D. Ga. 2019)(citation and internal quotation omitted); *see also* Fed. R. Civ. P. 8(d)(2)(allowing alternative statements of a claim). An unjust enrichment claim is an alternative theory of recovery when a contract claim fails, and thus must be plead as a separate claim. *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012). Further, a claim for unjust enrichment cannot be plead when either a court finds or the parties do not dispute the existence of a valid contract. *Id.* at 1310.

### b. Counts XVII and XX

In Count XVII, the Trustee asserts that Miles was unjustly enriched by transferring funds received with respect to the MCAs to PFP and the Miles Entities to the extent of his ownership interest. In Count XX, the Trustee asserts that Miles was unjustly enriched to the extent of his ownership interest in PFP and the Miles Entities by causing the Debtor to enter the Equipment Leases for Equipment that PFP and the Miles Entities received and used. Miles argues that the

31

Trustee's claims of unjust enrichment should be dismissed because he was conferred no benefit from the Debtor and the Trustee has alleged that a contract exists between Miles and the Debtor. The Court finds neither of these arguments persuasive. First, Miles disputes that he is party to the Operating Agreement. *Clark*, 914 F. Supp. 2d at 1310. Second, the Trustee plead his breach of contract claim (Count XXIV) as a separate claim from his unjust enrichment claims as permitted, such that no internal inconsistency lies in the Trustee's alternatively plead claims. *Id.* at 1309.

Additionally, the Trustee alleges that the MCAs caused the Debtor's accounts receivable to be fully encumbered. He explains, however, that most of the funds derived from the MCAs were directed to PFP and the Miles Entities. In other words, the Trustee alleges that Miles obligated the Debtor to repay funds that entities affiliate with Miles were to receive. With respect to the Equipment Leases, the Trustee avers that the Debtor paid for the use of the Equipment, which was not in fact used in the Debtor's operation. He alleges that the Equipment was in fact used by PFP and the Miles Entities—not the Debtor. Further, the Trustee contends that Miles was neither a member, authorized manager, nor owner of the Debtor under the Operating Agreement. He adds that Miles testified that the intercompany transfers were reflected in the Debtor's ledger as both loans from and loans to the Debtor to suggest the Debtor had some expectation of repayment at the time of the transfers. *Hollifield*, 251 Ga. App. at 131. The Trustee also asserts that Miles testified that part of the Debtor's business involved establishing subleases with various entities, which would suggest the Debtor had an expectation to receive payment for the use of the Equipment by PFP and the Miles Entities. *See id.*

Moreover, as noted above, the Trustee alleges that Miles owns, controls, or possesses some interest in PFP and each of the Miles Entities, such that he directed the transfers by the MCAs and received and used the Equipment to benefit his own entities at the expense of the Debtor. He adds

32

that allowing Miles, through PFP and the Miles Entities, to benefit from the MCAs and the Equipment Leases without compensating the Debtor has contributed to the Debtor's inability to operate and ultimate insolvency.  Accordingly, the Trustee has plausibly alleged that Miles is not a party to the Operating Agreement, the Debtor conferred a benefit on Miles through his entities, such that Miles should be required to compensate the Debtor for the benefit PFP and the Miles Entities received to the extent of his interest in the same. *Wachovia Ins. Servs., Inc.*, 299 Ga. App. at 449.

### viii.    Breach of Fiduciary Duty

Miles asserts that Count XXIX, in which the Trustee asserts a claim for breach of fiduciary duty, should be dismissed as he owed no fiduciary duty to the Debtor because he was never appointed as the Debtor's manager.  In the Response, the Trustee argues that Miles held himself out as the Debtor's manager, and thus, to the extent he was authorized to do so, he owes the Debtor fiduciary duties.

#### a.  Legal Standard

Under Georgia law, to state a claim for breach of fiduciary duty, a plaintiff must allege facts showing: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Sewell v. Cancel*, 331 Ga. App. 687, 689 (2015)(citation omitted).  To establish breach of duty to creditors, a plaintiff must show the same elements and also allege insolvency of the corporation. *Georgia Commercial Stores, Inc. v. Forsman*, 342 Ga. App. 542, 547 (2017). "Fiduciary duties and obligations are owed by those in confidential relationships." *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 606 (1998).  A confidential relationship includes any relationship "whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another . . . ." O.C.G.A. § 23-2-58.  Additionally, "managing members of

a limited liability company owe fiduciary duties to the LLC and to its members." *Song v. eGPS Sols. I, Inc.*, 371 Ga. App. 357, 369 (2024) (citation omitted). Consequently, a managing member must act with the "utmost good faith and loyalty in managing the LLC." *Id.*

### b. Count XXIX

Here, Miles argues that he owed no fiduciary duty to the Debtor as he was not the Debtor's manager. However, his argument is unpersuasive in light of the facts the Trustee has alleged. As detailed above, the Trustee alleges that Miles consistently held himself out to be a manager of the Debtor, such that Miles alleged conduct establishes that he is a fiduciary of the Debtor under Georgia law. *See* O.C.G.A. § 23-2-58. More specifically, the Trustee claims that Miles exercised control over the Debtor's assets and even identified himself as the Debtor's "Designated Manager" on the Debtor's Schedules and voluntary petition under the penalty of perjury. Therefore, the Trustee has alleged sufficient factual allegations to support his claim that Miles owed a fiduciary duty to the Debtor under Georgia law. *Atlanta Mkt. Ctr. Mgmt., Co.*, 269 Ga. at 606; *Song*, 371 Ga. App. at 369.

The Trustee avers further that Miles breached his fiduciary duties to the Debtor by entering or permitting the Debtor to enter into the lease agreement with Curepoint Dublin, the MCAs, and the Equipment Leases. Under the lease agreement with Curepoint Dublin, the Trustee maintains that the Debtor paid at least $65,406.25 more to lease the property from Curepoint Dublin than it would have paid to lease the property from Curepoint Dublin's lessor. He states further that Curepoint Dublin's registered office is Miles's home, and its registered agent is Miles's son. With respect to the Equipment Leases, the Trustee contends that the Debtor paid for use of the Equipment, which was not in fact used in the Debtor's operation. He asserts that the Equipment was in fact used by PFP and the Miles Entities.

34

Further, as noted above, the Trustee plausibly alleged that the MCAs caused the Debtor's accounts receivable to be fully encumbered despite most of the funds derived from the MCAs being directed to PFP and the Miles Entities.  The Trustee asserts that partly because of the agreements that Miles caused the Debtor to enter, the Debtor suffered financially. More specifically, he claims that Miles's actions caused the Debtor to have insufficient funds to operate. Therefore, the Trustee has plausibly alleged facts to establish Miles owed fiduciary duties to the Debtor, he breached those fiduciary duties by entering the MCAs, Equipment Leases, and the lease agreement with Curepoint Dublin, and the Debtor suffered damages caused by Miles's breach of his fiduciary duties.  *Sewell v. Cancel*, 331 Ga. App. at 689.

## CONCLUSION

Assuming the veracity of the allegations made by the Trustee herein, the Trustee's allegations in Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVII, XXIV, and XXIX "'plausibly give rise to an entitlement to relief.'" *See American Dental*, 605 F.3d at 1290, quoting *Iqbal*, 556 U.S. at 679.  Thus, for the foregoing reasons the Motion should be denied.

Accordingly, after review of the Amended Complaint, the Motion, the Response, and the Reply, it is hereby

**ORDERED** that the Motion is **DENIED**.

The Clerk is directed to serve a copy of this Order upon the Defendants, counsel for the Defendants, the Plaintiff, counsel for the Plaintiff, and the United States Trustee.

**[END OF DOCUMENT]**